**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **BRANTLEY ATCHLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:19-CV-00114-NCC** |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Brantley Atchley ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 19) and Defendant has filed a brief in support of the Answer (Doc. 24).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 7).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on February 12, 2016 (Tr. 169-77).  Plaintiff was initially denied on April 20, 2016, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 93-99).  After a hearing, by decision dated September 7, 2018, the ALJ found Plaintiff not disabled (Tr. 7-31).  On May 20, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and has not engaged in substantial gainful activity since August 1, 2015, the amended alleged onset date (Tr. 12).  The ALJ found Plaintiff has the severe impairments of chronic obstructive pulmonary disease (COPD), minimal patellofemoral degenerative change, status post left knee arthroscopic retropatellar chondroplasty/synovectomy, and status post lumbar fusion, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations (Tr. 13).  Plaintiff cannot climb ladders, ropes or scaffolds and only occasionally climb ramps or stairs (*Id.*).  Plaintiff can only occasionally balance or stoop, can never kneel, crouch or crawl, and can frequently reach, push or pull bilaterally (Tr. 13-14).  Plaintiff cannot have any concentrated exposure to extreme heat, cold, dust, fumes or other pulmonary irritants (Tr. 14). The ALJ found that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff can perform including document preparer, clerical mailer, and printed circuit board screener (Tr. 16-18).  Thus, the ALJ concluded that Plaintiff has not been under a disability from August 1, 2015, through the date of the decision (Tr. 18).

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

3

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-

4

finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ failed to identify neuropathy as a severe impairment (Doc. 19 at 3-4). Second, Plaintiff argues that the ALJ erred in her RFC determination (*Id.* at 4-8). Third, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's pain complaints (*Id.* at 8-10). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Severe Impairment

First, Plaintiff asserts that the ALJ failed to identify neuropathy as a severe impairment (Doc. 19 at 3-4). Specifically, Plaintiff argues that Plaintiff's diagnosed neuropathy in his bilateral feet is a severe impairment that significantly limits his ability to perform basic work activities including standing and walking as well as having an impact on his ability to concentrate (*Id.* at 4).

At step two of the sequential analysis, the ALJ determines whether a claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities,

5

the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or her] ability to work." *Caviness*, 250 F.3d at 605.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).

The Court finds the ALJ's determination regarding Plaintiff's severe impairments to be supported by substantial evidence.  As a preliminary matter, Plaintiff did not raise neuropathy as an impairment on his application for disability benefits (Tr. 14, 80-81, 227).  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed). While the ALJ did not address Plaintiff's neuropathy in her evaluation of Plaintiff's impairments at Step 2, she did consider Plaintiff's diabetes, a common complication of which is neuropathy,[2] finding that "[t]he evidence does not reveal that these impairments [including Plaintiff's diabetes] result in any work related limitations" (Tr. 12).

Regardless, the ALJ considered Plaintiff's peripheral neuropathy in her RFC analysis as Plaintiff indicated on his appeal of the Commissioner's initial decision that he had numbness occurring in the left foot after sitting in one position (Tr. 12, 15, 272).  *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).  *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

---

[2] In this instance, Plaintiff was not diagnosed with Type II diabetes until the beginning of 2017. Therefore, it is unclear whether Plaintiff's neuropathy is related to his diabetes.  *See* Tr. 3350-54 (March 2017 progress note indicating the new diagnosis).

Specifically, the ALJ stated: "Regarding the spine, the record contains complaints of low back pain with occasional radicular symptoms and peripheral neuropathy" (Tr. 15). Later in this section, the ALJ further noted, nerve conduction studies from January 2018 evidenced peripheral neuropathy (Tr. 16, 4116, 4138). Indeed, as noted by the ALJ, through the date of the hearing, Plaintiff continued to rely on medication for nerve and low-back pain (Tr. 16, 4205, 4285). *See also* Tr. 3363 (May 2016 progress note finding that the neuropathy is "worsening" with a recommendation to increase his medication). However, Plaintiff's neuropathy symptoms improved with proper medication management with largely normal exams and Plaintiff requesting that his dosage not be increased (*See* Tr. 4144). Nevertheless, as addressed in more detail below, Plaintiff's pain, including that from his neuropathy, was a factor in the ALJ's determination to limit Plaintiff to sedentary work with some additional postural and manipulative limitations (Tr. 16, 3956). *See, e.g.,* Tr. 3125 (indicating improvement with an increase in Plaintiff's Neurontin prescription but also noting "[h]e still suffers from what I feel are pains from peripheral neuropathy."). Therefore, to the extent the ALJ erred by not finding Plaintiff's neuropathy to be a severe impairment, such error was harmless in light of the ALJ's consideration of the impairment in her RFC analysis. *Givans v. Astrue*, No. 4:10-CV417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). *See also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have decided the case differently). In conclusion, the Court finds the ALJ's determination regarding Plaintiff's

severe impairments to be based on substantial evidence and consistent with Regulations and case law.

## B. Evaluation of Subjective Pain Complaints

The Court will next address Plaintiff's contention that the ALJ failed to properly evaluate Plaintiff's pain complaints (Doc. 19 at 8-10).  In evaluating Plaintiff's subjective complaints,[3] the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence of record and determined that it failed to support the severity of the Plaintiff's alleged symptoms.  Specifically, the ALJ found

_____

[3] Social Security Ruling 16-3p, 2016 eliminated the term "credibility" from the analysis of subjective complaints.  However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

that Plaintiff's statements concerning the intensity, persistence and limiting effects of his alleged symptoms are not entirely consistent with the medical evidence and other evidence in the record (Tr. 14). The ALJ detailed Plaintiff's medical history and referred to multiple objective measures during the relevant period to explain why she found Plaintiff's physical condition not disabling.

Upon a thorough and complete review of the record, the Court finds the ALJ's analysis to be supported by substantial evidence.[4] As the ALJ noted, Plaintiff underwent a left knee arthroscopy[5] and chondroplasty of the lateral patellar facet[6] in January 2014 (Tr. 15, 344, 414-15). However, by April 2014 Plaintiff had full range of motion in the knee, by June 2014 Plaintiff was released to return to full job duties, and by June 2015, Plaintiff was released to any and all activity without restriction related to his knee (Tr. 15, 334, 375-76, 384). *See also* Tr. 425 (noting maximum medical improvement in June 2015). At the June 2015 visit, his physician reported full extension, full flexion and a normal distal neurovascular examination (Tr. 15, 375). While Plaintiff has continued to report knee pain during the period at issue, Plaintiff has not undergone any additional treatment specific to his knee (Tr. 15, 4283). X-rays in March 2018 found no fracture, dislocation, erosion, effusion or soft-tissue swelling (Tr. 15, 4289). At that time, Plaintiff was reported as having non-antalgic gait and station (Tr. 16, 4286).

---

[4] The ALJ also detailed Plaintiff's records regarding his respiratory impairment and associated symptoms. The Court does not detail them here as Plaintiff does not raise any argument related to this analysis. Additionally, Plaintiff does not raise any argument regarding his elbow pain as such the Court will not address any pain associated with Plaintiff's elbow.

[5] An arthroscopy is an endoscopic examination of the interior of a joint. Stedman's Medical Dictionary, 76380 (2014).

[6] A chondroplasty is a reparative surgery of damaged cartilage in the knee. Stedman's Medical Dictionary, 172080 (2014).

Plaintiff also reported low back pain during the relevant period.  Plaintiff has undergone a number of back surgeries -- a laminectomy and fusion due to a herniated disc at L3-f right with internal disc derangement in October 2009 (Tr. 15, 1600-01), a second fusion in June 2010 (Tr. 15, 1622-23), and a posterior lumbar fusion in June 2017 (Tr. 16, 3823-24).  Plaintiff suffered complications from the June 2017 surgery resulting in an additional hospitalization (Tr. 16, 3837-42).  Nerve conduction studies from January 2018 evidenced peripheral neuropathy (Tr. 16, 4138).  Further, the ALJ reviewed then-recent imaging from May 2018 demonstrating severe left and moderate right foraminal stenosis with an abnormal gait (Tr. 16, 4281-82, 4286, 4302).

Second, the ALJ found that Plaintiff's pain was largely managed with medication (Tr. 16, 4205, 4285).  Specifically, as noted by the ALJ, Plaintiff had epidural steroid injections in December 2013, February 2015, and May 2017 but otherwise relied on medication for his nerve and low-back pain (Tr. 16, 337, 493, 503, 3484, 966, 4205, 4285).  Similarly, Plaintiff has found success addressing his neuropathy using medication (*See* Tr. 4144).  *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (evidence of relief from medication supports ALJ's findings that complaints were not fully credible); *Renstrom v. Astrue,* 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of effective medication resulting in relief . . . may diminish the credibility of a claimant's complaints."); *Wildman v. Astrue*, 596 F.3d 959, 965 n.3 (8th Cir. 2010) (ALJ may properly consider that pain is "fairly," though not completely, under control when the plaintiff is compliant with medication).

Upon full consideration of these records, the ALJ limited Plaintiff to work at the sedentary exertional level with postural and manipulative limitations (Tr. 16).  An ALJ may find that "subjective pain complaints are not credible in light of objective medical evidence to the contrary."  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).  To the extent Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome."  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  Thus, the ALJ's review of the objective medical evidence and determination that it failed to support the severity of the Plaintiff's alleged symptoms is supported by substantial evidence for the reasons set forth above.  *See Pearsall*, 274 F.3d at 1218 ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.").

Third, the ALJ found inconsistencies between Plaintiff's subjective complaints of disabling pain and evidence concerning his activities of daily living.  For example, as indicated in the record and discussed by the ALJ, Plaintiff is able to live alone, help care for his daughter, make his own meals each day, do laundry, drive a car, shop in stores, socialize with family and friends, and has no problem maintaining his own personal care (Tr 16, 247-51, 256).  Plaintiff reported to one physician that he has an active lifestyle activity level and cleans up after the pets in his home (Tr. 2013).  *See Thomas v. Berryhill* 881 F.3d 672, 676 (8th Cir. 2018) (daily activities and ability to do them conflicted with allegations of disability).

Fourth, although the ALJ did not address Plaintiff's work as it related to her analysis of Plaintiff's subjective complaints, the ALJ noted that Plaintiff worked both in 2015 and 2016 and that the amount earned from that work did not amount to substantial gainful activity (Tr. 12).

The record reflects that Plaintiff tried to go back to work in the last quarter of 2014, worked for six to seven weeks, and then stopped again when his workers' compensation started again in January 2015 (Tr. 172). Plaintiff also reported working as a union official and receiving some compensation for his position (*Id.*). *See also* Tr. 180-181, 202 (detailing limited earnings in 2015 and early 2016). Of note, Plaintiff reported to one physician that, "he used to work in an aluminum smelter but it has closed" (Tr. 3839). Even part-time work after the alleged onset date may be relevant to a claimant's RFC determination. *Toland v. Colvin*, 761 F.3d 931, 936 n.4 (8th Cir. 2014) (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). The work attempts in 2015 and early 2016, although unsuccessful, weigh against Plaintiff's subjective complaints of pain especially considering that he stopped working not necessarily as a result of his disability as leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. *Medihaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992).

Fifth, although not raised by the ALJ, Plaintiff appears to not always to have followed the treatment recommendations of providers and may have even been untruthful at times. During the relevant period, Plaintiff was frequently counseled to discontinue his use of tobacco but continued to smoke (Tr. 1975, 1982, 2019-20, 3232, 3839, 3984). For example, at a September 2015 visit with a pulmonologist Plaintiff reported that he was no longer smoking but his exhaled carbon-monoxide level "strongly suggest[ed] ongoing cigarette usage" (Tr. 3544-45). Indeed, "[h]e has tried to stop smoking and was successful between 2014 and 2015 but currently continues to smoke less than one pack daily" (Tr. 3991). "Failure to follow [a] recommended course of treatment weighs against a claimant's credibility." *Guilliams*, 393 F.3d at 802 (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)); *Wildman*, 596 F.3d at 968-69 (it is

permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment); *Julin,* 826 F.3d at 1087 ("Contradictory statements that [the plaintiff] made to treating physicians are yet another reason to discount [his] credibility").

In conclusion, the Court finds the ALJ evaluation of Plaintiff's subjective complaints, including those of pain, is based on substantial evidence and is consistent with Regulations and case law.

## C. RFC Determination

Next, Plaintiff argues that the ALJ erred in her RFC determination because the RFC determination is not supported by "some medical evidence" and that the ALJ "played doctor" in formulating the RFC (Doc. 19 at 4-8). Specifically, Plaintiff asserts that the record does not contain a physical RFC by any acceptable medical source (*Id.* at 5).

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting

*Cox*, 495 F.3d at 619).  "An administrative law judge may not draw upon [his or her] own inferences from medical reports."  *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case."  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted).  In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision.  20 C.F.R. § 404.1545(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary….").  "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on [her] ability to work."  *Byes*, 687 F.3d at 916.  However, "this duty is not never-ending and an ALJ is not required to disprove every possible impairment."  *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).  "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment."  *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).  "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'"  *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)).  "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."  *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

The Court finds that the ALJ's RFC determination is supported by substantial evidence. A consultative examination is not warranted when, as is the case here, the ALJ can properly determine the RFC from the medical evidence provided.  *Kamann*, 721 F.3d at 950.  As a

preliminary matter, contrary to Plaintiff's assertion that reversal is warranted because the record does not contain a physical RFC by any acceptable medical source, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932.  In addition to her evaluation of Plaintiff's subjective complaints in which she detailed the medical evidence and Plaintiff's activities of daily living as addressed above, the ALJ also considered the medical opinion evidence of record.

First, the ALJ properly considered the opinion of Dr. Myron Jacobs, M.D. ("Dr. Jacobs"), an independent pulmonary consultant (Tr. 16, 3544-45).  On November 4, 2015, Dr. Jacobs issued a report after seeing Plaintiff for an independent medical examination related to his worker's compensation claim on February 9, 2015, and for office visits on April 13, 2015 and September 22, 2015 (Tr. 364, 3544).  In his November 2015 report, Dr. Jacobs opined, as indicated by the ALJ, that Plaintiff would be able to return to work at his prior work that involved inactivity for the overwhelming majority of the daytime with little to no physical labor required to complete the tasks (Tr. 16, 3545).  The ALJ afforded the opinion "significant weight" because "[t]he examining physician was able to support this opinion by a comprehensive review of the medical records and the [Plaintiff's] job duties as well as a contemporaneous physical examination" (Tr. 16).  At the February 9, 2015 visit, Dr. Jacobs performed a number diagnostic studies indicating a "severe degree of obstructive lung disease" (Tr. 354).  However, after receiving medication management from Dr. Jacobs, Dr. Jacobs reported that Plaintiff was "now stable" (Tr. 364).  The ALJ also found the opinion to be consistent with the Plaintiff's daily activities and medication management of his pain (Tr. 16, 247-254, 4205, 4285).

Second, the ALJ properly considered the opinion of Plaintiff's treating physician, Dr. David B. Robson, M.D. ("Dr. Robson"), that Plaintiff is unable to work due to his multiple

disabilities (Tr. 16, 3121, 3123, 3126).  Dr. Robson opined in a June 23, 2016 treatment note that "[Plaintiff] is excused from work.  I do not feel he can return to the work force on a regular basis due to his multiple disabilities" (Tr. 3123, 3126).  The ALJ afforded this opinion "little weight" as the opinion whether an individual can work is a determination left to the commissioner and "the physician did not list any specific functional abilities or limitations" (Tr. 16).  Indeed, the opinion on a claimant's ultimate disability is reserved to the Commissioner.  *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1116 (8th Cir. 2008)); 20 C.F.R. § 404.1527(d) (opinion on ultimate disability is not medical opinion, and is not entitled to any "special significance").  Further, an ALJ may properly discount such conclusory opinions if contradicted by other objective medical evidence—as is the case here. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (the weight given a physician's opinion is limited if the opinion consists only of conclusory statements).  *See also Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (Commissioner may give physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence).  The ALJ also found the opinions "inconsistent with mild to moderate objective findings by the same physician" (Tr. 16).  During a concurrent visit, Dr. Robson found Plaintiff to have an abnormal, antalgic gait but normal heel and toe walking, generally normal strength of the legs, and only mild extension limitations (Tr. 3123).  Dr. Robson further indicated that follow up would be required only annually to "check his medications" (Tr. 3123).  "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions."  *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotations omitted).

In conclusion, the Court finds the ALJ's RFC determination to be based on substantial evidence and is consistent with Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of September, 2020.

      /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE